NOT FOR PUBLICATION                    [Dkt. Ent. 100]

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW JERSEY

## CAMDEN VICINAGE

| | |
|---|---|
| DIONE BROWN,<br><br>    Plaintiff,<br><br>                v.<br><br>SGT. ARRAYA ARRAYO, et al.,<br><br>    Defendants. | Civil No. 08-2661 (RMB/KMW)<br><br>**OPINION** |

Appearances:

Dione Brown
1233 Evesham Ave
Balitmore, MD 21239

        Pro Se Plaintiff

Daniel Michael Vannella
New Jersey Division of Law
R.J. Hughes Justice Complex
25 Market Street
P.O. Box 112
Trenton, NJ 08625

        Attorney for Defendants

**BUMB**, UNITED STATES DISTRICT JUDGE:

        Pro se plaintiff Dione Brown brings this civil rights

action pursuant to 42 U.S.C. § 1983.  He alleges that senior

corrections officers assaulted him while he was incarcerated at

1

Bayside State Prison in June 2007.  Currently pending before the Court is a motion by the defendant officers, Gerilynn Hickman, Gregory Ivanous, James Kita, Charles Ciaurelli, and James Messier (collectively, the "Defendants").  They seek:  (1) dismissal of all claims against them in their official capacities; (2) summary judgment on Plaintiff's § 1983 claim for excessive force and his state law claims for assault and battery; and (3) dismissal of Plaintiff's request for punitive damages.

The Court previously dismissed Plaintiff's claims for injunctive relief as well as all claims for damages against Defendants in their official capacities.  See Brown v. Arrayo, Civ. No. 08-2661, 2008 WL 4509653, *5-6 (D.N.J. Sept. 29, 2008); Mem. & Order, Sept. 11, 2009, Dkt. Ent. 24.  Defendants' motion to dismiss the official-capacity claims is therefore DISMISSED AS MOOT.  For the reasons that follow, the remaining motions are DENIED.

## I.   BACKGROUND[1]

On June 28, 2007, the Defendants and other correctional

---

[1] The background facts are drawn from the parties' Rule 56.1 Statements of Material Facts and Plaintiff's deposition testimony.  They are construed in the light most favorable to the non-moving party (here, the Plaintiff).  See Kopec v. Tate, 361 F.3d 772, 775 (3d Cir. 2004), cert. den'd, 543 U.S. 956 (2004).

officers assaulted Plaintiff, a prisoner at Bayside State
Prison, in retaliation for filing a grievance the day before.
Pl.'s Dep. Tr. 49-56, Defs.' Ex. A, Dkt. Ent. 100-6.  The
incident began on the evening of June 28th, when Plaintiff
observed certain officers conduct a search of his prison wing
and then pour mustard on his belongings, which were located in a
locker in his cell.  Pl.'s Dep. 43-44.  During the search, the
officers found a hotpot, which belonged to Plaintiff's roommate.
Pl.'s Dep. 44.  Plaintiff was sitting in his cell, attempting to
wipe the mustard off of his things, when Sergeant Amy Morgan[2] and
Defendant Messier approached him.  Id. at 45-46.  After a brief
exchange, Messier ordered Plaintiff to pick up the "mess" on the
floor and throw the items in the garbage.  Id.  To comply with
this order, Plaintiff was forced to leave the prison wing.  Id.
at 47.  Messier and Morgan apparently followed Plaintiff.  Once
he left the prison wing, they prevented him from returning to
it.  Id.  After another brief exchange, Morgan directed Messier
to take Plaintiff "behind the gate" to the "officer's podium".
Pl.'s Dep. 48-49.  At the officer's podium, all of the
Defendants repeatedly punched Plaintiff until he lost
consciousness.  Pl.'s Dep. 49-51.  One of the officers kicked

---

[2] Amy Morgan is also a defendant in this action.  Default
Judgment was entered against her on September 12, 2011. [Dkt.
Ent. 108.]

him in the head.  Id.  When Plaintiff regained consciousness,
Messier handcuffed him and led him to the infirmary with
Defendants Ivanous and Morgan.  Id. at 52.  In the infirmary,
Plaintiff was placed in a chair.  Id.  While still in handcuffs,
Messier held his head down, while a "Sergeant Gonzalez"
repeatedly ran up to Plaintiff and jumped on his neck and torso.[3]
Id. at 52-53.

Plaintiff sustained multiple injuries from being punched,
kicked in the face and head, and "stomped" in the groin.  Id. at
49-53.  As a result of these injuries, he now suffers from
painful headaches, earaches, and occasional leg pain.  Pl.'s
Dep. 31-36.  He also has anxiety attacks and difficulty
sleeping.  Id. at 34-36.

Defendants dispute Plaintiff's version of events.  They
allege that Messier conducted a search of Plaintiff's cell and
discovered an illegal hotpot.  Defs.' Statement of Undisputed
Material Facts ("DSUMF") ¶ 4.  When Messier called Plaintiff to
the "officer's station" to sign a contraband receipt form, he
became agitated and struck Messier in the jaw.  Defs.' Ex. A,
Dkt. Ent. 100-3; DSUMF ¶¶ 5-7.  As a result, Defendants Kita,

---

[3] United States Magistrate Judge Karen M. Williams gave Plaintiff
the opportunity to amend his complaint to add Sergeant Gonzalez
as a defendant, but Plaintiff has not availed himself of this
opportunity.  [Dkt. Ents. 109, 124.]

Ivanous, Ciaurelli, and Hickman "took Plaintiff to the floor in
order to restrain him."  DSUMF ¶¶ 14.

Following the events of June 28, 2007, Plaintiff was
charged with assault and possession of an unauthorized item (the
hotpot) in violation of the New Jersey Administrative Code.
DSUMF ¶ 30.  A prison hearing officer found Plaintiff guilty of
both charges.  DSUMF ¶ 31.  The Superior Court of New Jersey,
Appellate Division, upheld the hearing officer's ruling.  Defs.'
Ex. D, Dkt. Ent. 100-7 at p.21 of 23.  Contrary to the
Defendants' representation in their briefs, however, the
Appellate Division limited its review to whether the hearing
officer's finding on the assault charge was arbitrary or
capricious.  Id.

## II.  LEGAL STANDARD

Summary judgment shall be granted if "the movant shows that
there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law."  Fed. R.
Civ. P. 56(a). A fact is "material" if it will "affect the
outcome of the suit under the governing law . . . ."  Anderson
v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is
"genuine" if it could lead a "reasonable jury [to] return a
verdict for the nonmoving party."  Id. at 248.

When deciding the existence of a genuine dispute of

5

material fact, a court's role is not to weigh the evidence: all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party." Meyer v. Riegel Products Corp., 720 F.2d 303, 307 n.2 (3d Cir. 1983). However, a mere "scintilla of evidence," without more, will not give rise to a genuine dispute for trial. Anderson, 477 U.S. at 252. In the face of such evidence, summary judgment is still appropriate "where the record . . . could not lead a rational trier of fact to find for the non-moving party . . . ." Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "Summary judgment motions thus require judges to 'assess how one-sided evidence is, or what a 'fair-minded' jury could 'reasonably' decide.'" Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460 (3d Cir. 1989) (quoting Anderson, 477 U.S. at 265).

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). Then, "when a properly supported motion for summary

judgment [has been] made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" Anderson, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)). The non-movant's burden is rigorous: it "must point to concrete evidence in the record"; mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment. Orsatti v. New Jersey State Police, 71 F.3d 480, 484 (3d Cir. 1995).

### III. ANALYSIS

**A. § 1983 Claim**

Defendants move for summary judgment on Plaintiff's § 1983 claim for excessive force on the grounds that he has failed to produce sufficient evidence to support such a claim. Additionally, Defendants argue that because the New Jersey Superior Court, Appellate Division, affirmed a prison administrative finding that Plaintiff assaulted Defendant Messier, he is now barred from pursuing this claim, since it constitutes an improper collateral attack on his conviction. The Court rejects both arguments.

When considering a civil rights claim under § 1983, the Court must first identify the specific constitutional provision under which the claim arose. Graham v. Connor, 490 U.S. 386, 394 (1989). Although the Complaint does not cite the Eighth

7

Amendment, Plaintiff clarified in his deposition testimony that
he is suing Defendants for violating his Eighth Amendment
rights.  Pl.'s Dep. 75.  Moreover, since Plaintiff complains
that prison guards used excessive force against him during his
incarceration, the Eighth Amendment clearly governs this case.
Graham, 490 U.S. at 395 n.10 ("After conviction, the Eighth
Amendment 'serves as the primary source of substantive
protection...in cases...where the deliberate use of force is
challenged as excessive and unjustified.'") (quoting Whitley v.
Albers, 475 U.S. 312, 327 (1986)).

        The test for whether a claim of excessive force is
constitutionally actionable under the Eighth Amendment is
"whether force was applied in a good faith effort to maintain or
restore discipline or maliciously and sadistically for the very
purpose of causing harm."  Giles v. Kearney, 571 F.3d 318, 326–
27 (3d Cir. 2009) (quoting Whitley, 475 U.S. at 319) (internal
quotations omitted).  In conducting this inquiry, courts
consider: (1) the need for the application of force; (2) the
relationship between the need and the amount of force that was
used; (3) the extent of injury inflicted; (4) the extent of the
threat to the safety of staff and inmates, as reasonably
perceived by the responsible officials on the basis of the facts

known to them; and (5) any efforts made to temper the severity of a forceful response.  Id. (citing Whitley, 475 U.S. at 319).

Importantly, under Heck v. Humphrey, 512 U.S. 477, 481-89 (1994), this Court only credits Plaintiff's version of the facts insofar as it does not undermine the basis for his underlying prison administrative conviction, since that conviction was never reversed or otherwise impaired.  See Edwards v. Balisok, 520 U.S. 641 (1997) (finding that Heck barred § 1983 claim that would necessarily imply the invalidity of a prison disciplinary hearing and resulting sanctions); Ference v. Twp. of Hamilton, 538 F. Supp. 2d 785, 789 (D.N.J. 2009) (drawing inferences in Plaintiff's favor, as required by Heck, only insofar as they did not undermine basis for municipal court findings).

The findings of the hearing officer who adjudicated Plaintiff's disciplinary charges are handwritten, smudged, and largely illegible.  Defs.' Ex. H, Dkt. Ent. 100-3 at p.43 of 77. The Defendants have done little to elucidate these findings for the Court.  Fortunately, the New Jersey Appellate Division's Order clarifies that Plaintiff was convicted of assaulting Defendant Messier during an altercation involving an illegal hotpot.  See Defs.' Ex. D, Dkt. Ent. 100-7 at p. 21 of 23. Notably, there is no indication that the hearing officer made any findings as to the Defendants' conduct towards Plaintiff

9

<u>after</u> his assault of Messier.  Defs.' Ex. H.  Likewise, in
affirming Plaintiff's conviction, the Appellate Division also
made no findings on this issue.  Defs.' Ex. D.  The Appellate
Division's Order simply recited the facts as follows:

> [T]he physical confrontation arose out of a search of
> [Plaintiff's] cell which revealed contraband, a
> hotpot, in a locked footlocker.  When the hotpot was
> seized the DOC's witnesses said that appellant struck
> [Defendant] Messier in the jaw.

Defs.' Ex. D.

The Court therefore credits the hearing officer's finding
that Plaintiff assaulted Messier <u>when the hotpot was seized</u>, but
adopts Plaintiff's version of the remaining facts.  Construing
all reasonable inferences in Plaintiff's favor, the following
narrative now emerges:  Messier seized the hotpot from
Plaintiff's cell and Plaintiff responded by striking him; at
some later point, Plaintiff left the prison wing, exchanged
words with Messier and Morgan, and then was taken by them to the
officer's podium, where the Defendants beat him.[4]  Pl.'s Dep. 49-

---

[4] Plaintiff testified in relevant part as follows:

> Q: So [Amy Morgan] said take [me] behind the gate.
> [An unnamed correctional officer] takes me behind
> the gate and locks the gate.  Messier is standing
> directly in front of me twirling one of them metal
> lighters.  Amy Morgan is off towards the entrance
> of the door.  You have the other four [correctional
> officers] that's right here by the gate off to my
> left.  As Amy Morgan is talking, she is saying
> she's saying F this, F that.  She's just saying a
> whole lot of stuff.  I guess I just got – the last

50.

While correctional officers may use force against an inmate to preserve order and maintain the safety of other inmates and staff, they may not use gratuitous force against an inmate who has been subdued.  See, e.g., Giles, 571 F.3d at 326; Bethune v. Cnty. of Cape May, Civ. No. 08-5738, 2011 WL 2037627, *3 (D.N.J. May 20, 2011).  Here, a reasonable jury could conclude that Defendants attacked Plaintiff well after he struck Messier, when he no longer posed a threat to anyone.  The mere fact that Plaintiff assaulted Messier does not provide a "blank check justification" for the Defendants to use excessive force against him thereafter.  Giles, 571 F.3d at 327 ("The administrative

---

               words she said, she said well people have to be trying to stir up trouble.  People had to tell you to shut the f--- up something with that and I said, I said excuse me?  Are you confusing me with somebody else and Messier is standing in front of me and he says, Sarge, you want me to put this guy on his ass.  She said, I don't care.  Go ahead and he punched me in the forehead and the other[s], they coming like this.  I fell to the floor. There's a beam right here and I put my face towards the beam so I don't let them kick me in my face or something like that. . . . Next thing I know, there's, it's a flash and I went out. When I –

Q: . . . Who was doing this to you at this time? . . .

A: Messier, Ivanovs, Ciaureli, Hickman, and Morgan and Kita.

Q: And what were they doing?

A: Punching, mainly punching.  I don't know who kicked me in the back of my head.

Id. at 49-50.

assault determination and state court no contest plea for
[plaintiff's] hitting [defendant], before he was wrestled to the
ground, do not provide a blank check justification for
correctional officers' excessive use of force thereafter.").[5]
Thus, considering the Whitley factors set forth above, Plaintiff
has established a genuine question of fact as to whether
Defendants acted maliciously and sadistically to cause him harm.

Finally, Defendants point to video surveillance footage of
Plaintiff being escorted out of Bayside State Prison following
the alleged attacks.[6] They argue that this video contradicts
Plaintiff's version of events because it does not show that he
was severely injured.  Defs.' Moving Br. 21-22.  The video does
show, however, that Plaintiff has a bandage on the side of his
head, which is consistent with his testimony that Sergeant
Gonzalez struck him there and that Nurse Christopher Dion
subsequently applied Band-Aids to the area.  Pl.'s Dep. 52, 57,

---

[5] The Court notes that even if Plaintiff had not established a
lapse of time between his assault of Messier and Defendants'
assault of him, a question of fact would likely remain as to
whether Defendants used excessive force after restraining him,
since Defendants repeatedly punched him until he lost
consciousness, and one officer kicked him in the head.  Id.
[6] Defendants claim that this is the only video that exists of
Plaintiff on the day in question.  Plaintiff disputes this.  He
argues that surveillance tapes exist, which support his version
of events.  He suggests that Defendants have acted in bad faith
by refusing to produce them.  Since the Court denies summary
judgment, it declines to resolve this dispute at the present
juncture.

60, 64.  The Court hastens to add, however, that it is ill-equipped to form an opinion on the nature and extent of the injuries that someone in Plaintiff's position would likely have suffered and whether such injuries would be visible on this videotape.  These are questions more appropriately resolved by the finder of fact.  Where videotape evidence is susceptible to multiple reasonable interpretations or cannot clearly resolve the facts in dispute, as is the case here, summary judgment is inappropriate.  Bethune v. Cnty. of Cape May, Civ. No. 08-5738, 2011 WL 2037627, *3 (D.N.J. May 20, 2011) (citing Patterson v. City of Wildwood, 354 F. App'x 695, 698 (3d Cir. 2009)).  To the extent Defendants argue that the video shows only minor injuries, this fact does not defeat an Eighth Amendment claim. Wilkins v. Gaddy, -- U.S. --, 130 S.Ct. 1175, 1179 (2010) ("An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury.").

**B. State Law Claims**

Defendants also move for summary judgment on Plaintiff's state law claims, citing two alleged defects under New Jersey law.

**i. The New Jersey Tort Claims Act**

First, Defendants argue that Plaintiff failed to provide timely notice of his assault and battery claims as required by the New Jersey Tort Claims Act (the "Act"). The Act requires a person bringing a tort claim against a public official to give notice to the public entity within ninety days of the injury. N.J. Stat. Ann. § 59:8-8(a). A claim against the state must be filed either with (1) the Attorney General or (2) the department or agency involved in the alleged wrongful act or omission, here, presumably, the New Jersey Department of Corrections. N.J. Stat. Ann. § 59:8-7; Waheed v. Atkins, Civ. No. 09-467, 2010 WL 148798, *6 (D.N.J. Jan. 13, 2010) (finding that notice to New Jersey Department of Corrections may satisfy the Act's notice requirement where defendant was corrections officer at New Jersey State Prison).[7]

---

[7] Notice under the Act must include:

    a. The name and post office address of the claimant;

    b. The post-office address to which the person presenting the claim desires notices to be sent;

    c. The date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted;

    d. A general description of the injury, damage or loss incurred so far as it may be known at the time of presentation of the claim;

    e. The name or names of the public entity, employee or employees causing the injury, damage or loss, if known; and

14

Although Plaintiff did not file a formal notice of tort claim under the Act, he did write letters complaining of the incident to the state Attorney General's Office, as well as the governor, his senator, and the Cumberland County prosecutor's office.[8]  Pl.'s Dep. 85-86.  Plaintiff's letter to the state Attorney General's Office described the June 28th incident and conveyed his desire to file assault and battery charges.  Id. at 85, 87.  While Plaintiff did not submit this letter to the Court or inform the Court of when he sent it, he did reference this letter in a subsequent letter to former Governor Jon Corzine on September 20, 2007.  Pl.'s unnumbered exhibit, Dkt. Ent. 118-1, p.54 of 62.  The Court therefore infers that Plaintiff sent his letter to the state Attorney General's Office within ninety days of June 28th.[9]

The state Attorney General's Office referred the matter to the New Jersey Department of Corrections, Special Investigation

---

f. The amount claimed as of the date of presentation of the claim, including the estimated amount of any prospective injury, damage, or loss, insofar as it may be known at the time of the presentation of the claim, together with the basis of computation of the amount claimed.

N.J. Stat. Ann. 59:8-4.

[8] Plaintiff has also submitted letters that his wife sent to various public officials in 2008.  Pl.'s unnumbered exhibits, Dkt. Ent. 118-1.  Since these letters are dated well after the ninety-day notice period expired, the Court does not rely on them.

[9] There are 84 days between June 28th and September 20th.

15

Division ("SID"), which initiated an investigation into the matter.  Pl.'s Dep. 85-87.  A SID officer then interviewed Plaintiff at East Jersey State Prison to obtain the names of the officers who had allegedly attacked him.  Id. at 86-87.

Plaintiff also notified SID directly of the alleged attacks on the very day they occurred.  He testified that shortly after he was assaulted for the fourth time on June 28th, he saw SID Officer W. Maginnis and informed him of what had happened. Pl.'s Dep. 57-58.  Five days later, Maginnis took a statement from Plaintiff, in which Plaintiff described the assaults in great detail, the surrounding circumstances, the date, the names of the offending officers, as well as Plaintiff's name and prison identification number.  Pl.'s Ex. 6-B, Dkt. Ent. 118-1 pp.18-20 of 62.

New Jersey courts have recognized that plaintiffs may satisfy the Act's notice requirement through substantial rather than strict compliance.  Lebron v. Sanchez, 970 A.2d 399, 405 (N.J. Super. Ct. App. Div. 2009) (noting that the Act's notice requirement was not intended as a "trap for the unwary").  This doctrine is intended to prevent the inflexible application of the statute and save legitimate claims that would otherwise fail due to technical defects.  Id.  To substantially comply with the Act, a plaintiff must show: (1) the lack of prejudice to the

defending party; (2) a series of steps taken to comply with the Act; (3) a general compliance with the purpose of the Act; (4) a reasonable notice of petitioner's claim; and (5) a reasonable explanation as to why there was not strict compliance with the statute.  Id. (internal citations omitted).

Here, despite his pro se status, Plaintiff made significant efforts to alert the appropriate authorities to his claims.  To the extent that he did not satisfy each of the Act's technical requirements, he generally complied with the purpose of the statute.  As set forth above, he notified both the state Attorney General's Office and the DOC of his injuries within the requisite ninety days and gave them a detailed account of what happened.

Since the DOC investigated the incident only five days after it occurred, the Defendants did not suffer any prejudice from a lack of formal notice, and the purpose of the Act was achieved.  See Ventola v. N.J. Veteran's Memorial Home, 751 A.2d 559, 560 (N.J. 2000) (noting that the purpose of the Act is to compel a claimant to expose his intention of filing suit early in the process in order to permit the public entity to investigate while witnesses are available and the facts are fresh).

17

While it is unclear whether Plaintiff expressed a desire to pursue both criminal and _civil_ assault and battery claims, such a technicality will not defeat a _pro se_ plaintiff's otherwise diligent efforts to prosecute his claims.  _See_, _e.g._, _Small v. Whittick_, Civ. No. 06-1363, 2010 WL 3881303, *7 (D.N.J. Sept. 27, 2010) (_pro se_ plaintiff substantially complied with notice requirement as to his tort claims, where he filed complaint with attorney general's office indicating desire to "press charges" against defendant); _cf._ _Lebron_, 970 A.2d at 405 (noting that "notice of claim" is really a "misnomer" and "is more properly denominated as a notice of injury or loss").  Since Plaintiff has substantially complied with the Act, the Court rejects this basis for summary judgment of his tort claims.

**ii. Verbal Threshold**

Second, Defendants argue that Plaintiff's tort claims do not satisfy New Jersey's "verbal threshold", a doctrine which generally precludes plaintiffs from recovering for pain and suffering unless they have experienced permanent physical injury.  _See_ N.J. Stat. Ann. § 59:9-2(d).  This doctrine bars recovery for claims based on subjective evidence or minor incidents.  _See_ _Collins v. Union Cnty. Jail_, 150 N.J. 407, 413, 696 A.2d 625 (1997).  Defendants argue that Plaintiff cannot recover in tort, because he did not suffer a permanent physical

18

injury.  The New Jersey Supreme Court has recognized an
exception to the verbal threshold, however, where a public
employee's actions constitute willful misconduct.  <u>Toto v.
Ensuar</u>, 196 N.J. 134, 137-38, 952 A.2d 463 (2008).  Willful
misconduct occurs when there is "a deliberate act or omission
with knowledge of a high degree of probability of harm and
reckless indifference to consequences."  <u>Leang v. Jersey City
Bd. of Educ.</u>, 198 N.J. 557, 969 A.2d 1097 (2009) (internal
citation omitted).  Stated another way, the public employee must
know the act is wrong, but he need not actually intend to harm
the plaintiff.  <u>Id.</u>

     Here, given Plaintiff's testimony that Defendants beat him
without provocation until he lost consciousness, there is
certainly enough evidence of willful misconduct to create a
question of fact for the jury.  Accordingly, summary judgment on
Plaintiff's tort claims will be denied on this basis.

**C. Punitive Damages**

     Defendants urge the Court to dismiss Plaintiff's request
for punitive damages with respect to his § 1983 claim.  They
argue that punitive damages may not be awarded against them
because their actions did not rise to the level of malice or
disregard for Plaintiff's rights.  Punitive damages may be
awarded under § 1983 "when the defendant's conduct is shown to

be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." <u>Feldman v. Philadelphia Housing Auth.</u>, 43 F.3d 823, 833 (3d Cir. 1994) (quoting <u>Smith v. Wade</u>, 461 U.S. 30, 56 (1983)).  Since Plaintiff has testified that Defendants punched him repeatedly without provocation until he lost consciousness, a reasonable jury could find that Defendants acted with the requisite evil motive.  Accordingly, this motion is also denied.

**CONCLUSION**

For the foregoing reasons, the Defendants' motion to dismiss the official-capacity claims against them is DISMISSED AS MOOT, and their remaining motions are DENIED.  An appropriate Order will issue herewith.


<u>s/Renée Marie Bumb</u>
RENEE MARIE BUMB
United States District Judge


Date:  <u>September 27, 2012</u>